**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| RODNEY LITTLE, | Case No. 1:12-cv-949 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| CAROLYN W. COLVIN,<br>COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Rodney Little filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents five claims of error, all of which the Defendant disputes. For the reasons explained below, I conclude that this case should be REMANDED because the finding of non-disability is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On May 24, 2001, Plaintiff's mother, Monay Berry, applied for child's Supplemental Security Income (SSI) on her son's behalf. (Tr. 574). On June 24, 2001, the state agency determined Plaintiff was disabled as of May 1, 2001, when he was seventeen years old, based on meeting the mental retardation listing, at 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.05E. (Tr. 574). On September 26, 2005, Plaintiff filed an application for Disability Insurance Benefits (DIB). (Tr. 75-77). On January 26, 2006, the state agency awarded Plaintiff disability insurance benefits based on mental

1

retardation and colitis. (Tr. 28, 31). On May 19, 2009, following a continuing disability review (CDR) in 2009, the Social Security Administration found that that his mental retardation and colitis had made significant medical improvement and he was no longer disabled as of May 2009. (Tr. 31-33, 577-79).

On May 29, 2009, Plaintiff appealed the cessation determination. (Tr. 34). On July 13, 2010, Plaintiff, his attorney, and his mother attended a disability hearing before Lisa Jones, a hearing officer. (Tr. 584). On July 28, 2010, the disability hearing officer reconsidered Plaintiff's cessation determination and affirmed the finding that Plaintiff's disability had ceased in May 2009. (Tr. 30, 37-49). On October 29, 2010, Plaintiff timely requested a hearing before an administrative law judge (ALJ). (Tr. 50-58). An evidentiary hearing was held on April 22, 2011 at which Plaintiff and his mother appeared with counsel. (Tr. 628-71). Robert Breslin, an impartial vocational expert, also appeared and testified. On May 20, 2011, ALJ Samuel Rodner issued a decision, affirming the cessation determination that Plaintiff's disability had ceased on May 1, 2009, on grounds that the medical evidence showed Plaintiff's medical condition had improved as of that date, and that his impairments were no longer severe. (Tr. 19-27). Plaintiff now seeks judicial review of that decision.

The record on which the ALJ's decision was based reflects that Plaintiff was 27 years old at the time of the administrative hearing. He completed high school through a special education program. (Tr. 134, 234-243). He worked as a security guard at Paul Brown Stadium, seasonally, from November 2008 through February 22, 2011. Plaintiff's most recent full scale IQ score of 63 places him in the range of mental retardation on the WAIS-IV. Plaintiff's academic abilities were measured at the equivalent of grade 3

2

to 5, despite finishing high school through a special education program. (Tr. 521). Plaintiff also suffers from colitis and testified that he often suffers from uncontrollable bowel movements and it takes him nearly 20 minutes to use the bathroom. (Tr. 649). Plaintiff also testified that his legs become weak due to iron deficiency and he can only stand about three hours before needing a break. He further testified that he suffers from dizziness almost daily and must sit down until it subsides.

Based upon the record and testimony presented at the hearing, the ALJ found that beginning on May 1, 2009, Plaintiff had engaged in substantial activity. Notably, Plaintiff worked nine months in 2009 earning $9,283.99, which translates to $1081 per month over nine months.[1] The ALJ determined that medical improvement in his condition occurred and Plaintiff no longer had a "severe" impairment. (Tr. 21, 23). Thus, Plaintiff's combination of impairments no longer met, equaled, or functionally equaled the criteria of any listed impairments. (Tr. 23). Accordingly, the ALJ determined that Plaintiff's disability ceased on May 1, 2009. (Tr. 26).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff first argues that the ALJ erred by: 1) finding that Plaintiff worked at the level of substantial gainful activity in 2009; 2) finding Plaintiff's mild mental retardation and colitis "medically improved and that he did not suffer from any severe impairment; 3) failing to fulfill his duty to fully develop the record; 4) improperly assessing Plaintiff's credibility and 5) infringing upon Plaintiff's rights to due process when he insisted on questioning Plaintiff outside of his mother's presence. Upon close analysis, I conclude

---

[1] The threshold of for substantial gainful activity is $980 per month.

3

that Plaintiff's second assignment of error is well-taken and dispositive. As such, this matter should be remanded for further proceedings.

### II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone

>of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is not Substantially Supported**

As noted above, in May 2001, Plaintiff was found disabled and awarded SSI benefits as a child based on meeting the mental retardation listing, at 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.05E. (Tr. 574). In August 2002, a continuing disability review (CDR) confirmed that Plaintiff's disability continued. (Tr. 41). Thereafter, in September 2005, Plaintiff applied for Disability Insurance Benefits (DIB). On January 26, 2006, the state agency awarded Plaintiff disability insurance benefits based on his primary diagnosis of mental retardation and secondary diagnosis of colitis. (Tr. 28, 31). On May 19, 2009, following a CDR in 2009, the Social Security Administration found that that his mental retardation and colitis had made significant medical improvement and he was no longer disabled as of May 2009. (Tr. 31-33, 577-79). The ALJ affirmed this determination, finding that Plaintiff's mental retardation and colitis had medically improved and that such conditions were no longer "severe" beginning on May 1, 2009. For the reasons detailed below, the undersigned finds that this determination is not substantially supported.

   1. *Medical Improvement and ALJ's finding of no Severe Impairment*

Medical Improvement is generally determined by comparing the prior and the current medical evidence, that is by "... changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." 20 C.F.R. § 404.1594(b)(1). Moreover, any medical improvement found to exist will relate to a claimant's ability to work only if there has been a decrease in the severity of the impairment and an increase in the claimant's functional capacity to work. 20 C.F.R. §

6

404.1594(b)(3). *Couch v. Comm'r of Soc. Sec.,* 1:11–CV–174, 2012 WL 930864 (S.D. Ohio Mar. 19, 2012).

Under 42 U.S.C. § 423(f)(1), the Commissioner may not find a disabled person to be no longer under a "disability" unless such a finding is supported by "substantial evidence which demonstrates that (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work); and (B) the individual is now able to engage in substantial gainful activity." SSA regulations define "medical improvement" as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1).

It is the Commissioner's ultimate burden of proof to establish that the severity of a claimant's impairment has medically improved, and that the claimant is now able to perform substantial gainful activity. 42 U.S.C. § 423(f)(1); *Kennedy v. Astrue,* 247 Fed. Appx. at 764–765. Any medical improvement found to exist will relate to a claimant's ability to work only if there has been a decrease in the severity of the impairment and an increase in the claimant's functional capacity to work. 20 C.F.R. § 404.1594(b)(3).

Furthermore, a severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. § 404.1521(b). Plaintiff is not

7

required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984).

An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir.1985) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir.1984)). The severity requirement is a "*de minimus* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). *See also Rogers v. Commissioner*, 486 F.3d 234, 243 n. 2 (6th Cir.2007). Under the prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988) (citations omitted). The *de minimis* standard exists to allow "the threshold dismissal of claims obviously lacking medical merit." *Id*. "The purpose of the second step of the sequential analysis is to enable the Commissioner to screen out 'totally groundless claims.'" *Griffeth v. Commissioner of Social Security*, 217 F. App'x 425, 428 (6th Cir.2007), quoting *Farris v. Sec 'y of HHS*, 773 F.2d 85, 89 (6th Cir.1985). The *Higgs* Court characterized the dismissal of a disability claim at Step 2 based on medical evidence alone as "exceptional." 880 F.2d at 863; *Schulten v. Commissioner of Social Sec.*, 2009 WL 891770, 8 (S.D.Ohio 2009).

Upon careful review, the undersigned finds that the ALJ improperly determined that Plaintiff's mental retardation (and/or borderline intellectual functioning) and colitis, no longer constituted severe impairments. Accordingly, as explained below, the ALJ's step-two analysis is not substantially supported.

With respect to his mental retardation, the record indicates that in 2001, Plaintiff was found to meet/equal the criteria for Listing 112.05, mild mental retardation. (Tr. 188, 286-291). When evaluated in 2001, Plaintiff was described as having "marked" limitations in the domains of acquiring and using information, attending and completing tasks, and in interacting and relating with others (primarily because he had few friends and did not like crowds). (Tr. 288). In 2002, when he was 18 years old, Plaintiff was again found to have valid Verbal IQ of 68, Performance IQ of 62, and Full Scale IQ of 60-68. (Tr. 355). Dr. Kenford, who administered the testing, noted that Plaintiff was able to catch the bus, care for the dog, and get himself ready for work, yet he sometimes needed reminders for his chores and did not have any age-appropriate peer relations. *Id.* His reading ability was at a 4th grade equivalent. (*Id.*, Tr. 356). Dr. Kenford specifically diagnosed Plaintiff with Mild Mental Retardation, and reported that Plaintiff showed deficits in adaptive function as manifested by his significant delays in age-appropriate peer behaviors and in his inconsistent ability to handle his finances appropriately. (*Id.*, Tr. 357).

In April 2009, George Lester, Psy.D., a psychologist, examined Plaintiff at the request of the state agency. (Tr. 22-23, 517-24). Dr. Lester administered the WAIS-IV and Plaintiff received a full scale IQ score of 63. Dr. Lester noted that this score "falls withIN the mild range of mental retardation and is likely a low estimate of his actual

9

functions. He is likely functioning within the borderline range." (Tr. 520). Plaintiff reported that he is able to make breakfast for himself and his 2 year old daughter, perform household chores, drive and use public transportation. Dr. Lester also noted that Plaintiff's verbal comprehension, expression and reasoning skills were below average as well as his perceptual organizational skills, alertness to details and planning abilities. (Tr. 520). Dr. Lester observed that Plaintiff remembered only four out of five objects after a five minute delay, and that he made two errors when performing a Serial 3 task backwards from 30. *Id.* Dr. Lester assessed no Axis I diagnosis, and his Axis II diagnosis was an intelligence quotient (I.Q.) estimated to be in the borderline range. (Tr. 521). Dr. Lester concluded that Plaintiff had no more than mild impairment in any area of mental functioning. (Tr. 521-22).

In finding that Plaintiff has no "severe" mental impairment, the ALJ relied on Dr. Lester's assessment and on reports of Plaintiff's activities of daily living, which the ALJ found inconsistent with the IQ scores obtained by Dr. Lester. Specifically, the ALJ noted that Plaintiff was able to live on his own, care for a young child and work as security guard. (Tr. 23). Thus, the ALJ found that Dr. Lester's finding that Plaintiff "had no more than mild mental limitations . . . is consistent with a finding of no severe mental impairments." Such findings, however, fail to accurately evaluate Plaintiff's activities of daily living and/or his job duties as a security guard.

Notably, at the administrative hearing, Plaintiff testified that he does hold a driver's license; however, he also needs his own mother's help with transportation. (Tr. 645). Plaintiff testified that his mother helps him with his daily activities, including, shopping, the caring of his daughter, paying bills and even using money in a store. (Tr.

645, 652). In this regard, his mother testified that Plaintiff is passive and has a hard time communicating. As a result, she has to help him with paperwork and appointments. She noted that Plaintiff becomes confused when a lot of information is pushed on him all at once. (Tr. 40). Although Plaintiff has custody of his daughter on weekdays, she is at school from 6:30 or 7:00 a.m. until 4:30 or 5:00 p.m., and his mother helps him care for his daughter's hair, makes sure both Plaintiff and his daughter eat healthy foods, helps him with paperwork and housing issues, and answers questions by phone when he has trouble completing online applications. *Id.* Plaintiff had to take the driver's license test orally, and he has only one friend who he sees only every few weeks. *Id.*

Furthermore, Plaintiff testified that his job as a security guard consists of patting people down at Paul Brown Stadium – there is no evidence that he performs any of the tasks normally associated with security work, such as keeping records, walking the perimeter of the property, answering questions or giving directions to visitors, etc. (Tr. 635, 637-638).

Here, while it may have been reasonable for the ALJ to determine that some medical improvement may have occurred, this is not the case where the evidence is so lacking that the severity requirement simply cannot be satisfied. Notably, even if only mild limitations are noted, the adjudicator must still conclude that an impairment is severe where "the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d); *see also Griffeth*, 217 F. App'x at 428 (explaining that the ALJ's characterization of an impairment as "severe" even though he found it caused only mild

11

limitations was not necessarily inconsistent); *Felton–Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011) ("[C]ontrary to [the claimant's] assertions, the ALJ's finding that [her] degenerative disc disorder was a severe impairment at step two of the sequential evaluation does not contradict the ALJ's conclusion that the disorder's impact on her functioning was mild.  Step two of the sequential evaluation is a threshold question with a *de minimis* severity requirement.").  In this case, Plaintiff's IQ scores, alone, could serve as a basis for concluding that Plaintiff's mental impairment is sufficiently severe to proceed beyond step two in the sequential analysis.  As such, the ALJ's decision relating to Plaintiff's mental impairments cannot be affirmed and must be remanded for further fact-finding.

The ALJ's evaluation of Plaintiff's colitis is similarly flawed.  Notably, the record indicates that Plaintiff has been treating at Children's Hospital for colitis since 2001.  As a result of this condition, Plaintiff has experienced bloody diarrhea and his ulcerative colitis continues to agitate him.  (Tr. 438).  In October 2008, his stools were loose and he suffered from more bleeding.  (Tr. 442).  As noted by the doctor, "he is passing loose stool several times per day and he has no nocturnal diarrhea." (Tr. 436).  In September 2008, Plaintiff was "persistently symptomatic" with regard to his ulcerative colitis and experienced ongoing diarrhea and rectal bleeding.  (Tr. 460).  He continued to endure stool frequency, gross rectal bleeding throughout most of 2008.  (Tr. 436-442).  The ulcerative colitis persisted throughout 2009 and 2010.  A colonoscopy in July 2010 revealed mild to moderate colitis. (Tr. 547).  There was an increase of his stool volume in 2010.  (Tr. 549).  A biopsy in July 2010 revealed mild to moderate active chronic crypt-destructive colitis in three of six specimens taken.  (Tr. 595).

Dr. Allen Peck, Plaintiff's treating physician, reported on Plaintiff's ulcerative colitis and its effect on Plaintiff's functions in 2009. Plaintiff reported that he experienced intermittent pain several times per week. (Tr. 571). In addition, Plaintiff still suffered from rectal bleeding, diarrhea, and abdominal pain. Dr. Peck confirmed the diagnosis of ulcerative colitis. (Tr. 569). Plaintiff continued to suffer from loose stool and ulcerative colitis through 2011. Dr. Peck noted that he believed Plaintiff may be "capable of working; however, it would have to be a job that allows him bathroom privileges." (Tr. 573).

The ALJ determined that Plaintiff's ulcerative colitis improved with medication to the point that it was not severe. (Tr. 22). The ALJ cited evidence from Plaintiff's treating physician, Dr. Kocoshis, a gastro-intestinal specialist, who found Plaintiff's condition improved dramatically in 2007 when he was placed on a steroid sparing agent. (Tr. 22, 557-58). The ALJ noted that Dr. Kocoshis continued to treat Plaintiff through July 2009. (Tr. 22, referring to Exhibit 24F, pages 13-14 at Tr. 557-58), and reported in April 2008 that Plaintiff had only minimal symptoms. (Tr. 22). The ALJ also noted that Dr. Peck, Plaintiff's current specialist, had similar findings of good control with consistent medication use. (Tr. 22). In addition, the ALJ found that Plaintiff's own testimony confirms that he was managing his colitis with medication, seldom had bowel accidents, and had no need for special protective undergarments. (Tr. 641-43).

Plaintiff argues that comparing his condition in 2001-2002 to that of 2009 fails to show significant medical improvement and/or that his colitis was no longer a severe impairment. In 2001, Dr. Kocoshis observed that Plaintiff reported loose stools with blood, but also noted that Plaintiff was "still quite over-nourished." (Tr. 316-331). In

13

2008-2009, Plaintiff was again complaining of several loose stools per day tinged with blood (Tr. 373-381). In 2009-2010, Dr. Peck's records show that Plaintiff continued to have several bowel movements per day with "rectal bleeding, diarrhea, and crampy abdominal pain." (Tr. 557). In addition, the records have consistently shown throughout the years that Plaintiff has elevated liver enzymes; these have not improved, either (Tr. 315-331, 373-388, 456-497, 545-568). Dr. Peck agreed that Plaintiff would be limited to jobs which allowed him "bathroom privileges." (Tr. 573). Plaintiff argues that the need for "bathroom privileges" meets the definition of more than a "minimal" effect on the ability to work; in fact, it rules out entire classes of jobs, such as telephone operators or sales clerks, who must be at the work site until relieved by a coworker or supervisor. The undersigned agrees. Thus, assuming arguendo, that Plaintiff's colitis mildly affects his functional ability, the adjudicator must still conclude that an impairment is severe where "the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d). Such is the case here.

In sum, the undersigned concludes the ALJ failed to follow agency guidelines and the applicable law such that his decision at step two of the procedure outlined in 20 C.F.R. § 404.1520 is not supported by substantial evidence. It is, therefore, recommended that the Court remand this action for a determination of whether Plaintiff's medically determinable impairments of mild mental retardation/borderline intellectual functioning and colitis constitute a severe impairment for the purposes of 20 C.F.R. § 416.920(a)(4)(ii). Because this matter must be remanded to reconsider the step-two

findings, the ALJ should be mindful of Plaintiff's additional alleged errors (see *supra*, page 3) which may also require reconsideration in light of any new findings on remand.

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date. *Id.* 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**: the decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g) consistent with this opinion. As no further matters remain pending for the Court's review, this case be **CLOSED**.

       */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RODNEY LITTLE,                                                    Case No. 1:12-cv-949

Plaintiff,                                                                  Barrett, J.
                                                                                   Bowman, M.J.
v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).